# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ——————————————————X | |
| : | **CIVIL ACTION NO. 05 CV 5098** |
| MORRIS AKERMAN, on Behalf of Himself : | |
| and a Class of Persons Similarly Situated, : | ECF CASE |
| : | |
| Plaintiff, : | CLASS ACTION COMPLAINT |
| v. : | |
| : | |
| COLLINS AND AIKMAN CORP., DAVID : | **<u>JURY TRIAL DEMANDED</u>** |
| STOCKMAN, J. MICHAEL STEPP, and : | |
| BRYCE KOTH, : | |
| : | |
| Defendants. : | |
| ——————————————————X | |

Plaintiff, Morris Akerman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings wire and press releases published by and regarding Collins & Aikman Corp. ("Collins & Aikman" or the "Company") securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

Complaint.wpd

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of persons who purchased the securities of Collins & Aikman between May 6, 2004 and March 17, 2005, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to 10(b) and 20(a) of the Exchange Act, (15 U.S.C. § 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder, (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.  Additionally, the Company maintains a principal executive office in this Judicial District.

5.      In connection with the acts, conduct and other wrongs alleged herein in this complaint, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff Morris Akerman purchased Collins & Aikman securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant Collins & Aikman is a Delaware corporation with its principal executive offices located at 250 Stephenson Highway, Troy, Michigan 48083.

8.    Defendant David Stockman ("Stockman") was at all relative times, the Company's Chairman and Chief Executive Officer.

9.    Defendant J. Michael Stepp ("Stepp") was at all relative times, the Company's Chief Financial Officer.  After October 13, 2004, defendant Stepp retained his position as the Company's Vice President.

10.    Defendant Bryce Koth ("Koth") was, since October 13, 2004,  the Company's Chief Financial Officer.  Prior to October 13, 2004, defendant Koth was the Company's Vice President-Finance & Controller and head of tax.

11.    Defendants Stockman, Stepp, and Koth are collectively referred to hereinafter as the "Individual Defendants."  During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of Collins & Aikman were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations,

operational trends, financial statements, markets and present and future prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

13.    It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading, and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Each of the above officers of Collins & Aikman, by virtue of his or her high-level position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein.  Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the New York Stock Exchange (the "NYSE"), and governed by the provisions of the federal

securities laws, the Individual Defendants had a duty to disseminate accurate and truthful

information promptly, with respect to the Company's financial condition and performance,

growth, operations, financial statements, business, markets, management, earnings and present

and future business prospects, and to correct any previously-issued statements that had become

materially misleading or untrue, so that the market price of the Company's publicly-traded

securities would be based upon truthful and accurate information.  The Individual Defendants'

misrepresentations and omissions during the Class Period violated these specific requirements

and obligations.

15.    The Individual Defendants participated in the drafting, preparation, and/or

approval of the various public and shareholder and investor reports and other communications

complained of herein and were aware of, or recklessly disregarded, the misstatements contained

therein and omissions therefrom, and were aware of their materially false and misleading nature.

Because of their Board membership and/or executive and managerial positions with Collins &

Aikman, each of the Individual Defendants had access to the adverse undisclosed information

about Collins & Aikman's financial condition and performance as particularized herein and knew

(or recklessly disregarded) that these adverse facts rendered the positive representations made by

or about Collins & Aikman and its business issued or adopted by the Company materially false

and misleading.

16.    The Individual Defendants, because of their positions of control and authority as

officers and/or directors of the Company, were able to and did control the content of the various

SEC filings, press releases and other public statements pertaining to the Company during the

Class Period.  Each Individual Defendant was provided with copies of the documents alleged

herein to be misleading prior to or shortly after their issuance and/or had the ability and/or

opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the

Individual Defendants is responsible for the accuracy of the public reports and releases detailed

herein and is therefore primarily liable for the representations contained therein.

17.     Each of the defendants is liable as a participant in a fraudulent scheme and course

of business that operated as a fraud or deceit on purchasers of Collins & Aikman securities by

disseminating materially false and misleading statements and/or concealing material adverse

facts.  The scheme:   (i) deceived the investing public regarding Collins & Aikman business,

operations, management and the intrinsic value of Collins & Aikman securities; and (ii) caused

Plaintiff and other members of the Class to purchase Collins & Aikman securities at artificially

inflated prices.

18.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and (b)(3) on behalf of a Class consisting of all those who purchased or

otherwise acquired the securities of Collins & Aikman between May 6, 2004 and March 17,

2005, inclusive, (the "Class Period") and who were damaged thereby.  Excluded from the Class

are defendants, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in

which defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is

impracticable.  Throughout the Class Period, Collins & Aikman's securities were actively traded

on the NYSE.  While the exact number of Class members is unknown to plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiff believes that there are many

thousands of members in the proposed Class. Record owners and other members of the Class

may be identified from records maintained by Collins & Aikman or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that

customarily used in securities class actions.

20.    Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by defendants' wrongful conduct in violation of

federal law that is complained of herein.

21.    Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

22.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by defendants' acts as

alleged herein;

b.    whether statements made by defendants to the investing public during the

Class Period misrepresented or omitted to disclose material facts about the business, operations

and management of Collins & Aikman; and

c.    to what extent the members of the Class have sustained damages and the

proper measure of damages.

23.    A class action is superior to all other available methods for the fair and efficient

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

24.    Collins & Aikman is engaged primarily in the design, engineering and manufacture of automotive interior components, systems and modules.  The Company supplies products from three primary categories: plastic components and cockpits, soft trim and convertible roof systems.  Its products include instrument panels, fully assembled cockpit modules, floor and acoustic systems, automotive fabric and interior trim, as well as exterior trim and trim set, backlights, well slings, tonneau covers and power actuating systems.  In North America, Collins & Aikman manufactures component for approximately 90% of all light vehicle production platforms.  Sales are primarily made to North American-based original equipment manufacturers ("OEMs"), as well as Asian- and European-based OEMs.  It conducts all of its operating activities through its wholly owned subsidiary Collins & Aikman Products Co.  The Company has 102 plants and facilities worldwide.

### Materially False and Misleading
### Statements Issued During the Class Period

25.    On May 6, 2004, Collins & Aikman reported results for the first quarter ended March 31, 2004.  More specifically, the Company, in its press release, stated:

> The company reported record first quarter net sales in 2004 of
> $1.066 billion compared to $1.035 billion in the first quarter of
> 2003, a 3% increase which mainly reflects improved currency
> impact.  The company reported a loss of $23.3 million or 28 cents

per share in the first quarter of 2004, which included after-tax charges for restructuring, long-lived assets impairments and costs related to early extinguishment of debt of $10.6 million (or 13 cents per share). In the comparable 2003 quarter, the company had a loss of $26.2 million or 31 cents per share, which included after-tax charges for restructuring and long-lived asset impairments of $13.2 million (or 15 cents per share).

Commenting on the company's first quarter operating results, David A. Stockman, C&A Chairman and CEO stated," We are pleased with the significant performance improvement in EBITDA before restructuring and impairment charges. For the third consecutive quarter our EBITDA results were up double digits from our prior year on a comparable basis. We are also seeing our previous problem plants turning around their financial results from the 2003 levels."

The first quarter 2004 pre-tax restructuring charge of $9.5 million included costs associated with additional rightsizing efforts to reduce corporate overhead and salaried headcount and to close additional manufacturing facilities. This restructuring initiative is expected to further reduce the company's fixed-cost structure by approximately $13 million when fully implemented.

C&A's net debt, including outstandings under an off-balance sheet accounts receivable facility, was $1.432 billion at March 31, 2004.

26.    On May 7, 2004, Collins & Aikman filed its quarterly report with the SEC on

Form 10-Q. The Company's Form 10-Q was signed by defendant Stepp and reaffirmed Collins

& Aikman's financial results announced on May 6, 2004. Additionally, and with respect to its

financial results, the Company stated:

The consolidated financial statements include the accounts of the Company and its consolidated subsidiaries and in the opinion of management, contain all adjustments, including adjustments of a normal and recurring nature, necessary for a fair presentation of financial position and results of operations.

27.    On August 2, 2004, Collins & Aikman reported results for second quarter and six

months ended June 30, 2004.  More specifically, the Company, in its press release, stated:

> The Company reported record second quarter 2004 net sales of
> $1.036 billion.  The company reported a loss of 35 cents per share
> in the second quarter of 2004, which included after-tax charges for
> restructuring and long-lived asset impairments of $26.0 million (or
> 31 cents per share).  In the comparable 2003 quarter, the company
> had income of 13 cents per share, which included after-tax charges
> for restructuring and long-lived asset impairments of $4.4 million
> (or 5 cents per share).

> Commenting on the company's second quarter operating results,
> David A. Stockman, C&A Chairman and CEO, stated, "For the
> fourth consecutive quarter our EBITDA performance, excluding
> restructuring and impairment charges was up significantly from the
> prior year on a comparable basis. The savings from the
> restructuring program that began in the third quarter of 2003 is
> resulting in significant fixed cost savings as indicated by our year-
> over-year decline in selling, general and administrative expenses."

> The second quarter 2004 pre-tax restructuring charge of $10.4
> million included costs associated with additional actions to
> rightsize its overhead structure, further reduce salaried headcount
> and streamline the senior management team on a worldwide basis.
> This restructuring initiative is expected to further reduce the
> company's cost structure by approximately $11 million when fully
> implemented.  During the second quarter 2004, the company
> recognized $27.4 million of impairments of long-lived assets
> primarily related to $13.6 million of Intellimold assets and $11.0
> million of customer contracts as a result of changes in customer
> sourcing.

> For the six months ended June 30, 2004, the company reported
> sales of $2.103 billion compared to $2.069 billion for the
> comparable period of 2003.  The company also reported a net loss
> of $53.0 million or 63 cents per share, which included $35.6
> million (or 43 cents per share) of after-tax charges for restructuring
> and long-lived asset impairments.  For the comparable 2003
> period, the net loss was $15.5 million or 19 cents per share, which
> included after-tax charges for restructuring and loved-lived asset
> impairments of $17.2 million (or 21 cents per share).

> C&A's net debt, including outstandings under and off-balance

sheet accounts receivable facility, was $1.439 billion at June 30, 2004.

28.     On May 7, 2004, Collins & Aikman filed its quarterly report with the SEC on

Form 10-Q.  The Company's Form 10-Q was signed by defendant Stepp and reaffirmed Collins

& Aikman's financial results announced on May 6, 2004.  Additionally, and with respect to its

financial results, the Company stated:

> The consolidated financial statements include the accounts of the
> Company and its consolidated subsidiaries and in the opinion of
> management, contain all adjustments, including adjustments of a
> normal and recurring nature, necessary for a fair presentation of
> financial position and results of operations.

29.     On August 2, 2004, Collins & Aikman reported results for second quarter and six

months ended June 30, 2004.  More specifically, the Company, in its press release, stated:

> The Company reported third quarter 2004 net sales of $864.8
> million.  The company reported a loss of 67 cents per share in the
> third quarter of 2004, which included after-tax charges for
> restructuring and long-lived asset impairments and loss on early
> extinguishment of debt of $25.1 million (or 30 cents per share).  In
> the comparable 2003 quarter, the company had a loss of 38 cents
> per share, which included after-tax charges for restructuring and
> long-lived asset impairments of $16.0 million (or 19 cents per
> share).
>
> Commenting on the company's third quarter operating results,
> David A. Stockman, C&A Chairman and CEO, stated, "For the
> fifth consecutive quarter or EBITDA performance, excluding
> restructuring and impairment charges, was up from the prior year
> on a comparable basis.  This was achieved despite the headwinds
> from increased commodity costs and OEM production cuts.  The
> savings from the restructuring program that began in the third
> quarter of 2003 has generated significant fixed cost reductions."
>
> The third quarter 2004 pre-tax restructuring charge of $9.0 million
> included costs associated with additional actions to right-size the
> company's overhead structure, further reduce salaried headcount

and streamline the senior management team on a worldwide basis. This restructuring initiative is expected to further reduce the company's cost structure by approximately $20 million when fully implemented. During the third quarter of 2004, the company also recognized $10.3 million of impairments of long-lived assets primarily related to plant closings.

For the nine months ended September 30, 2004, the company reported sales of $2,968 million compared to $2,971 million for the comparable period of 2003. The company also reported a net loss of $108.6 million or $1.30 per share, which included $61.7 million (or 74 cents per share) of after-tax charges for restructuring and long-lived asset impairments and loss on early extinguishment of debt. For the comparable 2003 period, the net loss was $47.6 million or 57 cents per share, which included after-tax charges for restructuring and long-lived asset impairments of $33.1 million (or 40 cents per share).

Collins & Aikman's net debt, including outstandings under an off-balance sheet accounts receivable facility, was $1,552 million at September 30, 2004. During the third quarter of 2004, the company completed the refinancing of its senior subordinated debt and senior credit facilities.

30.    Also on November 9, 2004, Collins & Aikman filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by defendant Koth and reaffirmed Collins & Aikman's financial results announced on November 9, 2004. Additionally, and with respect to its financial results, the Company stated:

The consolidated financial statements include the accounts of the Company and its consolidated subsidiaries and in the opinion of management, contain all adjustments, including adjustments of a normal and recurring nature, necessary for a fair presentation of financial position and results of operations.

31.    The statements contained in ¶¶ 25-30 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that the Company improperly accounted for certain supplier rebates; (2) that the Company's financial statements

required net adjustments of approximately $10 - $12 million; (3) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal controls and was therefore unable to ascertain the true financial condition of the Company; and (5) that as a consequence of the foregoing, the Company's net income and financial results were materially overstated at all relevant times.

## The Truth Begins To Emerge

32.    On March 17, 2005, Collins & Aikman issue a press release entitled "Collins & Aikman Audit Committee Retains Independent Counsel for investigation of Previously-Reported Accounting Matters."  Therein, the Company stated:

> Collins & Aikman Corporation (NYSE:CKC) announced today that its Audit Committee has retained independent counsel to assist it in its investigation of the Company's accounting for certain supplier rebates.  The company previously reported that it had identified certain accounting for supplier rebates that led to premature or inappropriate revenue recognition or that was inconsistent with relevant accounting and standards and the Company's policies and practices.  The company's management immediately initiated an internal review of these matters while keeping the company's Audit Committee and outside auditors, KPMG LLP, informed of the status of its review.  The Audit Committee has determined to conduct an independent investigation into these matters.  It has retained independent counsel, Davis Polk & Wardwell, for that purpose, and they expect to retain such other advisors, including an accounting expert, as they deem appropriate.
>
> As previously announced, the company's internal review of vendor rebates covered an aggregate of approximately $88 million of vendor transactions in fiscal years 2002 through 2004.  Of such amount, the company's management believes that net adjustments of approximately $10 - $12 million are required primarily occurring during fiscal 2004. For further clarification, the company announced that management's preliminary analysis indicates that,

of such amounts, approximately $8 - $10 million would impact the previously reported nine months ended September 30, 2004 with the balance impacting 2003. The company expects to restate its results for the nine months ended September 30, 2004 to reflect these revisions and is continuing to evaluate whether a restatement of its 2003 results will be necessary. The company's Audit Committee and the Company's outside auditors, KPMG LLP, have not commented upon management's current expectations. The company cannot presently comment upon the timing for completion of, or the ultimate scope or outcome of, the Audit Committee investigation, the audit or any necessary restatements. Nor can it comment upon whether the outcome of the investigation will impact the foregoing adjustments.

As previously disclosed, the company has not yet filed its annual report on Form 10-K for 2004 due to this accounting matter and the need for additional time for completion of the 2004 audit and the review of internal controls over financial reporting under Section 404 under Sarbanes-Oxley. The company further announced that it initiated a process for obtaining waivers of the financial statement delivery requirements for a period of time from its lenders under its senior credit facility and for modifications of certain of its financial covenants. There can be no assurance that any of the required or desirable waivers from our senior lenders, lessors or others will be received on a timely basis, and the failure to obtain waivers could materially and adversely affect the company and its liquidity.

33.    News of this shocked the market. Shares of Collins & Aikman fell $0.39 per share or 23.93 percent, on March 17, 2005, to close at $1.24 per share.

### POST CLASS STATEMENTS

34.    On March 24, 2005, Collins & Aikman issue a press release entitled "Collins & Aikman Audit Committee Retains Independent Counsel for Investigation of Previously-Reported Accounting Matters." Therein, the Company stated:

> Collins & Aikman Corporation (NYSE:CKC) announced today that its Audit Committee has retained independent counsel to assist it in its investigation of the Company's accounting for certain supplier rebates. The company previously reported that it had

identified certain accounting for supplier rebates that led to premature or inappropriate revenue recognition or that was inconsistent with relevant accounting and standards and the Company's policies and practices. The company's management immediately initiated an internal review of these matters while keeping the company's Audit Committee and outside auditors, KPMG LLP, informed of the status of its review. The Audit Committee has determined to conduct an independent investigation into these matters. It has retained independent counsel, Davis Polk & Wardwell, for that purpose, and they expect to retain such other advisors, including an accounting expert, as they deem appropriate.

As previously announced, the company's internal review of vendor rebates covered an aggregate of approximately $88 million of vendor transactions in fiscal years 2002 through 2004. Of such amount, the company's management believes that net adjustments of approximately $10 - $12 million are required primarily occurring during fiscal 2004. For further clarification, the company announced that management's preliminary analysis indicates that, of such amounts, approximately $8 - $10 million would impact the previously reported nine months ended September 30, 2004 with the balance impacting 2003. The company expects to restate its results for the nine months ended September 30, 2004 to reflect these revisions and is continuing to evaluate whether a restatement of its 2003 results will be necessary. The company's Audit Committee and the Company's outside auditors, KPMG LLP, have not commented upon management's current expectations. The company cannot presently comment upon the timing for completion of, or the ultimate scope or outcome of, the Audit Committee investigation, the audit or any necessary restatements. Nor can it comment upon whether the outcome of the investigation will impact the foregoing adjustments.

As previously disclosed, the company has not yet filed its annual report on Form 10-K for 2004 due to this accounting matter and the need for additional time for completion of the 2004 audit and the review of internal controls over financial reporting under Section 404 under Sarbanes-Oxley. The company further announced that it initiated a process for obtaining waivers of the financial statement delivery requirements for a period of time from its lenders under its senior credit facility and for modifications of certain of its financial covenants. There can be no assurance that any of the required or desirable waivers from our senior lenders, lessors or others will be

received on a timely basis, and the failure to obtain waivers could materially and adversely affect the company and its liquidity.

## COLLINS & AIKMAN'S VIOLATION OF GAAP RULES IN ITS QUARTERLY REPORTS FILED WITH THE SEC

35.    These financial statements and the statements about them were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for and disclosure about its revenues, in violation of GAAP and SEC rules.

36.    GAAP are those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosures which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

37.    Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

a.    The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

b.    The principle that "financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational

Complaint.wpd                              16

investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34)

      c.    The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated. (FASB Statement of Concepts No. 1, ¶ 40);

      d.    The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated. (FASB Statement of Concepts No. 1, ¶42);

      e.    The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated. (FASB Statement of Concepts No. 2, ¶79);

      f.    The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated. (FASB Statement of Concepts No. 2, ¶¶58-59); and

      g.    The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated. (FASB Statement of Concepts No. 2, ¶95).

38.    The adverse information concealed by defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. 229.303).

39.    Moreover, the adverse information concealed by defendants during the Class Period and detailed above was in violation of SEC Regulation S-X, which states that "financial

statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate." SEC Regulation S-X requires that interim financial statements [i.e., Form 10-Qs] must also comply with GAAP. 17 C.F.R. §210.10-01(a).

## UNDISCLOSED ADVERSE INFORMATION

40.     The market for Collins & Aikman's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Collins & Aikman's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Collins & Aikman's securities relying upon the integrity of the market price for Collins & Aikman's securities and market information relating to Collins & Aikman, and have been damaged thereby.

41.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of Collins & Aikman's securities by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Collins & Aikman's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically

Complaint.wpd                                    18

positive assessment of Collins & Aikman and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

43.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding Collins & Aikman, their control over, and/or receipt and/or modification of Collins & Aikman's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Collins & Aikman, participated in the fraudulent scheme alleged herein.

44.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

**Applicability Of Presumption Of Reliance**
**Fraud-On-The-Market Doctrine**

45.    At all relevant times, the market for Collins & Aikman securities was an efficient market for the following reasons, among others:

(a)    Collins & Aikman securities met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Collins & Aikman filed periodic public reports with the SEC and the NYSE;

(c)    Collins & Aikman regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Collins & Aikman was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.    As a result of the foregoing, the market for Collins & Aikman securities promptly digested current information regarding Collins & Aikman from all publicly available sources and reflected such information in the price of Collins & Aikman's securities.  Under these circumstances, all purchasers of Collins & Aikman securities during the Class Period suffered similar injury through their purchase of Collins & Aikman securities at distorted prices, and a

presumption of reliance applies.

## NO SAFE HARBOR

47.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Collins & Aikman who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

48.    Plaintiff repeats and realleges the allegations set forth above as though fully set forth herein.

49.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

other members of the Class to purchase Collins & Aikman securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

50.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Collins & Aikman securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse information about the business, operations and future prospects of Collins & Aikman as specified herein.

52.     These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Collins & Aikman value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Collins & Aikman and its business operations and future prospects in the light of the circumstances under which they were made,

not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of Collins &

Aikman securities during the Class Period.

53.    Each of the Individual Defendants' primary liability, and controlling person

liability, arises from the following facts: (i) the Individual Defendants were high-level executives

and/or directors at the Company during the Class Period and members of the Company's

management team or had control thereof; (ii) each of these defendants, by virtue of his or her

responsibilities and activities as a senior officer and/or director of the Company was privy to and

participated in the creation, development and reporting of the Company's internal budgets, plans,

projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

familiarity with the other defendants and was advised of and had access to other members of the

Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

was aware of the Company's dissemination of information to the investing public which they

knew or recklessly disregarded was materially false and misleading.

54.    The defendants had actual knowledge of the misrepresentations and omissions of

material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them.  Such

defendants' material misrepresentations and/or omissions were done knowingly or recklessly and

for the purpose and effect of concealing Collins & Aikman's operating condition and future

business prospects from the investing public and supporting the artificially inflated price of its

securities.  As demonstrated by defendants' overstatements and misstatements of the Company's

business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discovery whether those statements were false or misleading.

55.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Collins & Aikman securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Collins & Aikman publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Collins & Aikman securities during the Class Period at artificially high prices and were damaged thereby.

56.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Collins & Aikman was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Collins & Aikman securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.    By virtue of the foregoing, defendants have violated Section 10(b) of the

Exchange Act, and Rule 10b-5 promulgated thereunder.

58.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against Defendants

59.    Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of Collins & Aikman within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly and indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or caused the statements to be corrected.

61.    In particular, each of these defendants had direct and supervisory involvement in

the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.    As set forth above, Collins & Aikman and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in the Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and experts' fees;

(d)    Such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

DATED:  May 26, 2005

Respectfully submitted,

**STULL, STULL & BRODY**


By     /s/ Aaron Brody
       Jules Brody (JB-9151)
       Aaron Brody (AB-5850)
       Tzivia Brody (TB-7268)
6 East 45th Street
New York, New York 10017
(212) 687-7230

**WEISS & LURIE**
Joseph H. Weiss (JW-4534)
551 Fifth Avenue
New York, New York 10176
(212) 682-3025

**Attorneys for Plaintiff**